UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON MARCUS RESCH,

          Plaintiff,

v.

TODD LAMBART et al.,

          Defendants.

_____/

Case No. 1:21-cv-967

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983 and 1985. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lambart, Sperling, Rewerts, Washington, Beecher, and Unknown Party #1. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and 42 U.S.C. § 1985 claims against Defendants Edlinger and Keck. The following claims remain in the case: (1) Plaintiff's First and Eighth Amendment claims, as well as his malpractice claim, against Defendant Allenbaugh; and (2) Plaintiff's First Amendment retaliation claims against Edlinger and Keck.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following DRF personnel: Warden Randee Rewerts, Resident Unit Manager Unknown Beecher, Maintenance Supervisor Unknown Party #1, Corrections Officers Unknown Keck and Unknown Edlinger, Health Unit Manager Todd Lambart, Physician's Assistant Kyle Sperling, and Nurse Unknown Allenbaugh.

Plaintiff alleges that he was transferred to DRF on September 6, 2019, and was placed into a level four cell assignment. (ECF No. 1, PageID.4.) On September 16, 2019, Plaintiff entered housing unit 500, cell 92, and "immediately notice[d] black mold along the exterior well and windows, as well as along the wall which the toilet/sink combination was affixed to." (*Id.*) Plaintiff notified the corrections officer who made the next security round about the mold. (*Id.*) He claims that the officer denied the presence of the mold and walked away. (*Id.*)

Plaintiff claims that he was locked in that cell for 22-23 hours per day and began to experience watery and itchy red eyes, frequent coughing, headaches, and a scratchy throat. (*Id.*) Plaintiff thought that these symptoms derived from his continuous exposure to black mold. (*Id.*) He told Defendant Edlinger about the mold, and Defendant Edlinger responded, "I'm an officer, not maintenance. Tell someone from maintenance." (*Id.*)

By October 17, 2019, Plaintiff had been exposed to the black mold for approximately one month. (*Id.*) He submitted another medical kite about his symptoms, including rashes, hives, nausea, vomiting, and a runny nose, and stated that he thought the black mold was causing his symptoms. (*Id.*) Plaintiff was "not immediately evaluated nor treated for said symptoms, despite repeated verbal inquiries of various nurses Plaintiff had interacted with thereafter." (*Id.*)

On November 2, 2019, Plaintiff broke out in various rashes and hives on various parts of his body. (*Id.*, PageID.4–5.) Plaintiff notified a healthcare provider about the black mold in his cell

4

and in portions of the showers; he was told to notify his housing unit staff. (*Id.*, PageID.5.) Plaintiff did so, telling the next corrections officer "he came into contact with that day." (*Id.*)

On November 11, 2019, Plaintiff fell ill again and submitted another medical kite. (*Id.*) He submitted another medical kite on November 13, 2019, setting forth his symptoms and asking why he had not been evaluated after submitting a kite on October 17, 2019. (*Id.*) Plaintiff was seen by an unknown healthcare provider on November 15, 2019. (*Id.*) Plaintiff also notified Defendant Beecher about the "extensive presence" of black mold; Defendant Beecher stated, "Alright. I'll let maintenance know." (*Id.*)

On November 20, 2019, Dr. Scott Holmes (not a party) evaluated Plaintiff's symptoms. (*Id.*) Plaintiff told Dr. Holmes about the black mold. (*Id.*) Dr. Holmes told Plaintiff "that Defendant Rewerts would be notified." (*Id.*) That same day, Defendant Beecher came to Plaintiff's cell and directed Plaintiff and his cellmate to exit the cell. (*Id.*) Defendant Beecher inspected the cell and stated, "Yeah. That's black mold. We'll get someone over here to clean it out. I didn't know it was that bad in here." (*Id.*)

On November 22, 2019, Plaintiff filed a Step I grievance about the mold issue. (*Id.*, PageID.5–6.) On November 25, 2019, he again asked to be evaluated and treated. (*Id.*, PageID.6.) On November 29, 2019, he again notified healthcare about his symptoms because his previous medical kites "had gone unanswered." (*Id.*)

On December 3, 2019, Plaintiff notified Defendant Edlinger that he had outgoing legal mail that needed processed. (*Id.*, PageID.9.) Defendant Edlinger told him to wait for Defendant Beecher. (*Id.*) After Plaintiff's legal mail was processed, he went to healthcare pursuant to a callout. (*Id.*) Plaintiff was met by Defendant Allenbaugh, who chastised Plaintiff for being late. (*Id.*) When Defendant Allenbaugh read Plaintiff's symptoms from the medical kite he had

previously submitted, Defendant Allenbaugh instructed Plaintiff to "pick only two of these symptoms because that's just how I do it." (*Id.*) Plaintiff refused, and Defendant Allenbaugh stated, "You know you're late and I could just reschedule you." (*Id.*) Plaintiff indicated that he had been late because of the processing of his legal mail and told Defendant Allenbaugh that could be confirmed by contacting Defendant Beecher. (*Id.*) Defendant Allenbaugh stated, "Medical takes priority over legal mail." (*Id.*) Plaintiff apologized for being slightly late, and Defendant Allenbaugh stated, "I am going to document that you were late and just have you rescheduled." (*Id.*) Plaintiff indicated that he would prepare an affidavit regarding the denial of medical care, and Defendant Allenbaugh yelled, "Did you just threaten me?" (*Id.*)

On December 4, 2019, Plaintiff again broke out in rashes and hives; he was sent to healthcare. (*Id.*, PageID.6.) There, Nurse Bean (not a party) evaluated him and took measurements of his "various blotches of hives/rashes." (*Id.*) Plaintiff told Nurse Bean that he thought his symptoms were related to his exposure to black mold. (*Id.*) Nurse Bean responded, "The symptoms seem right for molds." (*Id.*) Nurse Bean asked Defendant Sperling to come into the examination room. (*Id.*) Defendant Sperling conducted a "brief visual evaluation of Plaintiff's rashes/hives" and directed that Plaintiff be given 50mg of Benadryl, stating, "That should clear it up." (*Id.*) Later that day, Plaintiff wrote letters to Defendants Rewerts, Lambart, and Unknown Party #1, placing them "on notice of the presence of black mold within the shower stalls of 500 unit as well as Plaintiff's then assigned cell." (*Id.*, PageID.6–7.)

Also on December 4, 2019, Plaintiff "discovered what appeared to be rat fecal matter inside of his purportedly 'Kosher' religious diet tray, and brought such to the attention of Defendant Edlinger and another C/O." (*Id.*, PageID.9–10.) Defendant Edlinger and the officer refused to provide Plaintiff with a replacement religious diet tray, and Plaintiff submitted a grievance against

Defendant Edlinger. (*Id.*, PageID.10.) Plaintiff claims that on December 10, 2019, Defendant Edlinger interviewed him about his grievance, contrary to MDOC policy.[2] (*Id.*) Defendant Edlinger asked Plaintiff if he had filed the grievance, and Plaintiff confirmed that he had. (*Id.*) Defendant Edlinger responded, "Are you sure these are the f***ing games you want to play, Resch?" (*Id.*) Plaintiff then submitted a grievance about Defendant Edlinger's violation of policy as well as his threats. (*Id.*) On November 23, 2019, Plaintiff submitted another grievance about the denial of an indigent hygiene kit by Defendants Keck and Edlinger. (*Id.*)

On December 14 and 15, 2019, Plaintiff sent two more kites to medical about his symptoms. (*Id.*, PageID.7.) On December 17, 2019, he again broke out in hives and rashes and was sent to healthcare. (*Id.*) Nurse Bean evaluated Plaintiff again. (*Id.*) Plaintiff was told that he would be "seen soon," and was told to return to his housing unit. (*Id.*)

On December 20, 2019, Plaintiff submitted another medical kite, asking to be seen for his symptoms. (*Id.*) On December 22, 2019, Plaintiff was sent to healthcare after showing a corrections officer that he had broken out in hives and rashes again. (*Id.*) Plaintiff was met by Nurse Wheeler (not a party), who told Plaintiff that a medical provider was not available because it was a weekend. (*Id.*) Nurse Wheeler said that she was "trying to reach someone by phone but they're not calling back." (*Id.*) After waiting 20–30 minutes without a call back, Nurse Wheeler told Plaintiff that "she was about to leave for the evening but that the nursing staff replacing her would contact Plaintiff within the housing unit." (*Id.*) Plaintiff avers, however, that at no time

---

[2] According to Plaintiff, Defendant Edlinger violated MDOC Policy Directive 03.02.130, ¶ V, which provides that "[p]risoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent."

during that evening did "any medical personnel make contact with Plaintiff whatsoever." (*Id.*, PageID.8.)

On December 23, 2019, Plaintiff notified Defendant Edlinger that he was breaking out in hives and rashes all over. (*Id.*, PageID.10.) Defendant Edlinger responded, "Shouldn't file grievances. Send in a kite." (*Id.*) Two minutes later, Plaintiff's cell door was opened, and he was told to report to the gate for grievance review. (*Id.*) After leaving his cell, Plaintiff told Officer Allen (not a party) about his medical distress. (*Id.*) Officer Allen called healthcare, then informed Plaintiff that the healthcare provider "stated a topical ointment had been prescribed, but that no [provider] was presently available to oversee Plaintiff's application of said ointment." (*Id.*)

Two hours later, Plaintiff approached Defendant Keck while shirtless and told him that he was in medical distress, showing him the hives and rashes. (*Id.*, PageID.11.) Defendant Keck told Plaintiff to return to his cell, stating "Go lock down, Resch." (*Id.*) Almost five hours later, Plaintiff was told to go to healthcare. (*Id.*) Upon his arrival, Nurse Nelson (not a party) told Plaintiff that he had been scheduled to see Defendant Sperling, but that Defendant Sperling had "cancelled Plaintiff's examination for unknown reasoning." (*Id.*) Nurse Nelson gave Plaintiff "two small packets of triple antibiotic ointment, and instructed Plaintiff to return to his (mold infested) assigned cell." (*Id.*, PageID.8.)

On December 24, 2019, Plaintiff woke himself up from "incessant scratching at the extremely painful rashes and/or hives." (*Id.*, PageID.8.) Plaintiff "repeatedly informed housing unit C/Os of the wound, and petitioned for medical treatment, to no avail." (*Id.*) That evening, Plaintiff made contact with Nurse Geister (not a party) and asked for treatment. (*Id.*) Nurse Geister applied an antibiotic spray and told Plaintiff to "keep the wound clean while also submitting a

medical kite." (*Id.*) Officer Morrel (not a party) then called healthcare on Plaintiff's behalf and told Plaintiff that he had an appointment on January 9, 2020. (*Id.*)

On December 25, 2019, Plaintiff "took colored photographs of his open wound while on a visit with his then significant other." (*Id.*) He alleges that he "had to report to the healthcare building for [approximately] twelve (12) consecutive days to have his wound cleaned and rebandaged." (*Id.*)

Plaintiff claims that on December 27, 2019, Defendant Washington received notice regarding the black mold via email. (*Id.*) On December 31, 2019, Defendant Sperling "finally prescribed Plaintiff an antihistamine, Visteril." (*Id.*, PageID.8–9.) Plaintiff claims that he was unable to "escape the black mold within 500-92 until January 2, 2020, when [his] custody level was lowered and Plaintiff was reassigned to DRF level two." (*Id.*, PageID.9.)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. He also contends that Defendants Sperling committed medical negligence and that Defendant Allenbaugh violated the Hippocratic oath. Plaintiff also avers that Defendant Rewerts failed to properly train and supervise Defendants Edlinger and Keck. He further alleges that Defendants Edlinger and Keck violated his rights under 42 U.S.C. § 1985. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.11–13.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A.    Claim Pursuant to 42 U.S.C. § 1985

As noted above, Plaintiff suggests that Defendants Edlinger and Keck violated 42 U.S.C. § 1985 when they refused him medical treatment on December 23, 2019. (ECF No. 1, PageID.12.) To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[3] a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose

---

[3] Subsections (1) and (2) of Section 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff's complaint is devoid of facts suggesting that Defendants Edlinger and Keck's alleged actions were motivated by his membership in a distinct class. Plaintiff's Section 1985 conspiracy claim will, therefore, be dismissed.

### B.    Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims Against Defendants Lambart, Rewerts, Washington, and Unknown Party #1

Plaintiff contends that Defendants Lambart, Rewerts, Washington, and Unknown Party #1 violated his Eighth Amendment rights by failing to act upon Plaintiff's notice regarding the presence of black mold. (ECF No. 1, PageID.11.) Plaintiff also alleges that Defendant Rewerts

violated his Eighth Amendment rights by failing to adequately train and supervise Defendants Edlinger and Keck. (*Id.*, PageID.12.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis in original). "We have interpreted this standard to mean that 'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476,

481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts plausibly showing that Defendants Lambart, Rewerts, Washington, and Unknown Party #1 encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Moreover, Plaintiff fails to allege any facts regarding Defendant Rewerts's alleged failure to adequately train and supervise Defendants Edlinger and Keck. At most, Plaintiff alleges that he had an email regarding the black mold sent to Defendant Washington and that he sent letters regarding the same to Defendants Lambart, Rewerts, and Unknown Party #1. Nothing in the complaint, however, allows the Court to infer that these Defendants received Plaintiff's notices and were actually aware of the presence of black mold, or that Defendant Rewerts was actually aware of the conduct by Defendants Edlinger and Keck Plaintiff alleges.

Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Lambart, Rewerts, Washington, and Unknown Party #1 were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's claims against Defendants Lambart, Rewerts, Washington, and Unknown Party #1 are premised upon nothing more than *respondeat superior* liability and, therefore, will be dismissed.

### 2. Eighth Amendment Claims

Plaintiff contends that Defendant Beecher violated his Eighth Amendment rights by failing to act upon Plaintiff's notice regarding the presence of black mold. (ECF No. 1, PageID.11.) He also avers that Defendants Sperling and Allenbaugh violated his Eighth Amendment rights because

they failed to treat his symptoms adequately, and that Defendants Edlinger and Keck violated his Eighth Amendment rights by refusing his requests to go to healthcare on December 23, 2019. (*Id.*, PageID.12.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate

14

indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Black Mold

Plaintiff contends that he told Defendant Beecher about the black mold on November 18, 2019, and that Defendant Beecher violated his Eighth Amendment rights by failing to act upon that notice. (ECF No. 1, PageID.11.) In his complaint, Plaintiff alleges that when he notified Defendant Beecher about the black mold, Defendant Beecher responded, "Alright. I'll let maintenance know." (*Id.*, PageID.5.)

Defendant Beecher's response, however, does not permit the Court to infer deliberate indifference. Defendant Beecher apparently agreed to inform maintenance about the black mold issue, but perhaps failed to do so. While possible that Defendant Beecher's failure was intentional, Plaintiff does not allege any facts to support that inference. It is also possible that Defendant Beecher's failure to do so was inadvertent and that he was simply negligent. As noted above, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Iqbal*, 556 U.S. at 679. While the Court is sympathetic to Plaintiff's concerns about his exposure to black mold, there is nothing in Plaintiff's complaint that might distinguish Defendant Beecher's purported deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Beecher.

### b.    Medical Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d

531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

18

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff contends that Defendant Sperling violated his Eighth Amendment rights by failing properly to evaluate and treat his symptoms from October 17, 2019, through December 30, 2019, when he prescribed Visteril. (ECF No. 1, PageID.11.) Plaintiff interacted with Defendant Sperling on December 4, 2019, when Defendant Sperling prescribed 50mg of Benadryl for Plaintiff's rashes and hives. (*Id.*, PageID.6.) He had no further interaction with Defendant Sperling until December 31, 2019, when Defendant Sperling prescribed Visteril, an antihistamine. (*Id.*, PageID.8–9.) While Plaintiff faults Defendant Sperling for not providing further treatment, nothing in the complaint allows the Court to infer that Defendant Sperling was even aware of Plaintiff's numerous medical kites requesting treatment during the relevant period. Moreover, it is clear from Plaintiff's complaint that he received treatment from other healthcare personnel during that time. While certainly Plaintiff suffered from serious medical conditions, he has failed to allege facts showing that Defendant Sperling's response to Plaintiff's complaints was deliberately indifferent or that the treatment he provided was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Sperling will be dismissed.

Plaintiff also contends that Defendant Allenbaugh violated his Eighth Amendment rights by refusing to evaluate and treat him on December 3, 2019. (ECF No. 1, PageID.12.) With respect to Defendant Allenbaugh, Plaintiff contends that she chastised him for being slightly late to his medical callout on December 3, 2019. (*Id.*, PageID.9.) She read Plaintiff's symptoms from his medical kite and instructed him to "pick only two of these symptoms because that's just how I do it." (*Id.*) When Plaintiff refused to do so, Defendant Allenbaugh said that she could just reschedule him for being late. (*Id.*) Plaintiff apologized and told Defendant Allenbaugh that he was late because of his legal mail processing. (*Id.*) Ultimately, Defendant Allenbaugh stated, "I am going to document that you were late and just have you rescheduled." (*Id.*) Plaintiff received no treatment during his callout. (*Id.*) Given these allegations, the Court concludes that Plaintiff has alleged a plausible Eighth Amendment claim against Defendant Allenbaugh.

Plaintiff also asserts that Defendants Edlinger and Keck violated his Eighth Amendment rights by refusing to allow him to go to medical for treatment on December 23, 2019. (ECF No. 1, PageID.12.) With respect to Defendant Edlinger, Plaintiff alleges that on December 23, 2019, he notified Defendant Edlinger that he needed medical treatment for hives and rashes. (*Id.*, PageID.10.) Defendant Edlinger responded, "Shouldn't file grievances. Send in a kite." (*Id.*) That same day, he also notified Defendant Keck that he needed medical treatment for hives and rashes. (*Id.*, PageID.11.) Defendant Keck instructed Plaintiff to return to his cell. (*Id.*) Plaintiff acknowledges, however, that he received medical attention later that same day. (*Id.*) Plaintiff does not claim that he was unable to send a healthcare kite requesting medical attention by the usual methods. Nor does Plaintiff allege that Defendants Edlinger and Keck had the authority or knowledge to contravene or second-guess decisions by healthcare officials. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held

liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)). Plaintiff's allegations, therefore, do not state Eighth Amendment claims against Defendants Edlinger and Keck.

### 3.    First Amendment Retaliation Claims

Plaintiff avers that Defendant Allenbaugh retaliated against him by refusing to treat him on December 3, 2019, after Plaintiff refused to "reduce his known symptoms to merely two symptoms" and orally complained about such instruction. (ECF No. 1, PageID.12.) He also alleges that Defendants Edlinger and Keck retaliated against him for filing grievances by refusing him medical treatment on December 23, 2019. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Here, Plaintiff identifies the grievances he filed against Defendants Edlinger and Keck. (ECF No. 1, PageID.10.) Moreover, Plaintiff alleges that he orally complained to Defendant Allenbaugh about her instruction to choose only two of his symptoms and indicated that he would draft an affidavit stating that she refused him access to treatment. (*Id.*, PageID.9.) Plaintiff, therefore, has adequately alleged that he engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff alleges that Defendants Edlinger and Keck refused to send him to medical for treatment and that Defendant Allenbaugh refused to provide treatment. Plaintiff, therefore, has adequately alleged adverse action for purposes of his retaliation claims.

Finally, to state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the protected conduct motivated the adverse action. With respect to Defendants Edlinger and Keck, Plaintiff alleges that the adverse action was linked to the protected conduct temporally and that Defendant Edlinger indicated to him that their actions were taken in response to his grievances. With respect to Defendant Allenbaugh, Plaintiff alleges that she refused him medical treatment and questioned whether Plaintiff was threatening her, linking the adverse action to the protected conduct temporally. The Court, therefore, concludes that Plaintiff has adequately alleged First Amendment retaliation claims against Defendants Edlinger, Keck, and Allenbaugh.

### 4.     State Law Malpractice Claims

As noted *supra*, Plaintiff asserts a medical malpractice claim against Defendant Sperling. (ECF No. 1, PageID.11.) He also suggests that Defendant Allenbaugh violated the Hippocratic oath. (*Id.*, PageID.12.) As an initial matter, "violating the Hippocratic oath does not state a claim upon which relief can be granted." *See Moore v. St. John's Hosp.*, No. 15-4177-SEM-TSH, 2016 WL 1735769, at *3 (C.D. Ill. Mar. 23, 2016). The Court, therefore, construes Plaintiff's Hippocratic oath claim against Defendant Allenbaugh to be a medical malpractice claim. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that

Defendants Sperling and Allenbaugh violated state law, therefore, fail to state a claim under Section 1983.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, considering the Court's dismissal of Plaintiff's federal claim against Defendant Sperling, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to him. Accordingly, Plaintiff's medical malpractice claim against

Defendant Sperling will be dismissed without prejudice. Plaintiff's Eighth Amendment claim against Defendant Allenbaugh, however, remains pending. The Court, therefore, will exercise supplemental jurisdiction over his malpractice claim against her.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lambart, Sperling, Rewerts, Washington, Beecher, and Unknown Party #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and 42 U.S.C. § 1985 claims against Defendants Edlinger and Keck. The following claims remain in the case: (1) Plaintiff's First and Eighth Amendment claims, as well as his malpractice claim, against Defendant Allenbaugh; and (2) Plaintiff's First Amendment retaliation claims against Edlinger and Keck.

An order consistent with this opinion will be entered.

Dated: March 22, 2022                         /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              U.S. Magistrate Judge